FILED
DEC 14 2022
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. **4:22CR705-AGF/SPM** |
| CHARLES CARBON III, | ) |
| Defendant. | ) |

**INDICTMENT**

The Grand Jury charges that:

**INTRODUCTION**

1.  The United States Small Business Administration (hereinafter "SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in economic recovery after disasters.

2.  To aid this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

3.  The Coronavirus Aid, Relief, and Economic Security (hereinafter "CARES") Act is a federal law that was enacted in March 2020 to provide emergency financial assistance to the millions of Americans suffering the economic impact caused by the COVID-19 pandemic. One source of relief provided for in the CARES Act is the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the Paycheck Protection Program (hereinafter "PPP").

1

4. To obtain a PPP loan, a qualifying business is required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application requires the business to acknowledge the program rules and make certain affirmative certifications in order to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) is required to certify: (a) that the small business was in operation on February 15, 2020; (b) average monthly payroll expenses; and (c) number of employees. These certifications are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for PPP loans are required to submit documentation supporting their payroll expenses.

5. A PPP loan application is then processed by a participating lender. If a PPP loan application is approved, the participating lender funds the loan using its own monies, which are then guaranteed by the SBA.

6. PPP loan funds are required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities for the business. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan toward payroll expenses.

7. The SBA also provided COVID-19 Economic Injury Disaster Loans ("EIDL"), pursuant to the CARES Act which, allowed for the SBA to offer the EIDL funding to business owners negatively affected by the COVID-19 pandemic.

8. EIDL applications are submitted via the SBA online portal. Applicants submit their personal and business information in support of each EIDL application, including the size of the

affected business, the ownership of the business, number of employees for the business, and gross business revenues realized in the 12 months prior to COVID-19 impact on the national economy.

9. In addition to EIDL funding, applicants could also request and receive up to $10,000.00 in an EIDL Cash Advance Grant, based on the number of employees claimed. That grant was not required to be repaid.

10. EIDL applications included a paragraph wherein the applicant affirmed that the information submitted is true and correct under the penalty of perjury and applicable criminal statutes.

11. The servers receiving the EIDL applications via the SBA online portal are located in Virginia, Iowa, and Washington.

12. PNC Bank and Cross River Bank, with branches located in St. Louis, Missouri, are a financial institutions within the meaning of Title 18, United States Code, Section 20, the deposits of which are insured by the Federal Deposit Insurance Corporation.

13. Defendant Charles Carbon III ("Carbon") is a resident of St. Louis, Missouri, in the Eastern District of Missouri.

14. At all times relevant to this Indictment, Carbon maintained an account ending in x7464 with PNC bank.

15. At all times relevant to this Indictment, Carbon maintained an account ending in x1153 with Regions Bank.

16. Cross River Bank is based out of Fort Lee, New Jersey, and acted as a participating lender in the PPP program, and in that capacity, accepted and processed PPP loan applications.

17. At all times relevant to this Indictment, deposits and transfers from Cross River Bank to Carbon's account with PNC were completed by means of interstate wire transmission.

18. At all times relevant to this Indictment, transactions between the SBA and PNC Bank were completed by means of interstate wire transmission.

19. At all times relevant to this Indictment, transactions between MODES and PNC Bank were completed by means of interstate wire transmission.

## COUNT I
### (BANK FRAUD: 18 U.S.C. § 1344)

### THE SCHEME TO DEFRAUD

20. Paragraphs 1-19 are realleged and incorporated by reference as if fully set forth herein.

21. On or about August 6, 2020, in St. Louis, Missouri, in the Eastern District of Missouri, the defendant,

### CHARLES CARBON III,

devised and intended to devise a scheme and artifice to obtain moneys, funds, credits, assets, securities and other property owned by, or under the custody and control of Cross River Bank, a financial institution, by means of false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

22. It was part of the scheme to defraud that Carbon applied for a PPP loan at Cross Rivers Bank with the intent to fraudulently obtain loan proceeds.

23. It was further part of the scheme to defraud that the defendant falsely represented in the PPP loan application that his average monthly payroll was $7,520.

24. It was further part of the scheme to defraud that the defendant falsely represented in the PPP loan application that his business was in transportation and warehousing.

25. It was further part of the scheme to defraud that the defendant falsely represented in the PPP loan application that the purpose of the funds was for payroll, lease and mortgage interest.

26. It was further part of the scheme to defraud that the defendant falsely represented in the PPP loan application that he had 6 employees.

27. It was further part of the scheme to defraud that the defendant falsely represented in the PPP loan application that his business's gross receipts and sales in 2019 was $81,300.

28. It was further part of the scheme to defraud that the defendant used the funds on personal purchases, rather than being used for the purposes of the PPP loan program.

29. It was further part of the scheme to defraud that Cross River Bank relied on the truthfulness of the defendant's representations in reaching its decision to issue the loan.

30. On or about the dates set forth below in each individual count, in St. Louis, Missouri, in the Eastern District of Missouri, the defendant,

### CHARLES CARBON III,

executed and attempted to execute the scheme and artifice set forth above, to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of Customers Bank, which was a financial institution as defined in Title 18, United States Code, Section 20, by means of material false and fraudulent pretenses, representations, and promises, in that Defendant Carbon submitted a false and fraudulent PPP loan application to Cross River Bank for the purpose of obtaining money, funds, credits, assets, securities, and other property owned by, and under the custody and control of Cross River Bank, as described below:

| COUNT | ON OR ABOUT DATE | LOAN APPLICATION | AMOUNT |
|---|---|---|---|
| I | August 6, 2020 | SBA Loan # 4584408200 | $18,800.00 |

| | | Application for Charles Carbon submitted to obtain funds from Cross River Bank | |
|---|---|---|---|

All in violation of Title 18, United States Code, Section 1344.

## COUNT II
(WIRE FRAUD: 18 U.S.C. § 1343)

### THE SCHEME TO DEFRAUD

31. Paragraphs 1-30 are realleged and incorporated by reference as if fully set forth herein.

32. In or about June 26, 2020, in St. Louis, Missouri, in the Eastern District of Missouri, the defendant,

**CHARLES CARBON III**,

devised and intended to devise a scheme and artifice to obtain moneys, funds, credits, assets, securities and other property owned by, or under the custody and control of SBA, by means of materially false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

33. It was part of the scheme to defraud that Carbon applied for an EIDL loan with the intent to fraudulently obtain loan proceeds.

34. It was further part of the scheme to defraud that the defendant falsely represented in the EIDL loan application that his average monthly payroll was $7,698.33.

35. It was further part of the scheme to defraud that the defendant falsely represented in the EIDL loan application that his number of employees was 10.

36. It was further part of the scheme to defraud that the defendant falsely represented in the EIDL loan application that his gross revenues for 2019 was $92,380.

6

37. It was further part of the scheme to defraud that the defendant falsely represented in the EIDL loan application that his industry was agriculture and his ownership start date was March 11, 2018.

38. It was further part of the scheme to defraud that the defendant falsely represented in the EIDL loan application that he did not receive any other compensation from other sources.

39. It was further part of the scheme to defraud that the SBA relied on the truthfulness of the defendant's representations as to his income in reaching its decision to issue the loan.

40. On or about the date set forth below, in St. Louis, Missouri, in the Eastern District of Missouri, the defendant,

**CHARLES CARBON III,**

on or about the date set forth below, in St. Louis County, in the Eastern Division of the Eastern District of Missouri, and elsewhere, defendant Charles Carbon III, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| COUNT | ON OR ABOUT DATE | LOAN APPLICATION | AMOUNT |
|---|---|---|---|
| II | June 26, 2020 | SBA Loan # 3306734974 Application for Charles Carbon submitted to obtain funds from SBA to his account with PNC ending in x7476 | $10,000.00 |

All in violation of Title 18, United States Code, Section 1343.

7

## COUNT III

### THE UNEMPLOYEMNT INSURANCE BENEFITS SYSTEM

41.     Paragraphs 1-40 are realleged and incorporated by reference as if fully set forth herein.

42.     The Social Security Act of 1935 initiated the Unemployment Insurance ("UI") system, which is operated and managed by each state at the direction of the U.S. Department of Labor ("DOL"). In the majority of states, benefit funding is based solely on a tax imposed on employers. However, DOL funds administrative costs associated with each state's UI program. The UI system is designed to provide benefits to persons who are out of work due to no fault of their own, and who meet other eligibility requirements of the state program.

43.     A beneficiary's eligibility for UI, the amount of UI benefits for which they are eligible, as well as the length of time benefits are available are determined by each state's laws. In all states, individual claimants must be eligible for employment and actively searching for employment while receiving UI benefits.

44.     A claimant receives UI benefits by completing an application at a local "one-stop center," by telephone, or online at each state's website. A claimant must provide the claimant's name, date of birth, social security number, home address, and other personal information. On a weekly or bi-weekly basis, the claimant then files for weekly payment benefits by certifying that the claimant is unemployed, eligible for benefits, and is seeking employment.

45.     The state agencies authorize their financial services sections to release UI funds in the form of either: (a) a state contracted debit card mailed to the applicant; (b) a direct deposit into a pre-paid debit card account; (c) a direct deposit into the claimant's designated bank account; (d) or in rare cases, some states will issue a check, if requested.

46. As relevant to this Indictment, direct deposits of UI funds were completed through the automated clearing house ("ACH"), an electronic funds-transfer system that facilitates payments within the United States. From time to time, the UI deposits may be coded with identifiers showing the state of the UI claim's origin or the name of the individual associated with the UI claim whose identity is used to make the claims. Those direct deposits are made by means of interstate wire transmission to the bank account of the payment recipient.

### FEDERAL PANDEMIC UNEMPLOYMENT COMPENSATION

47. According to the United States Centers for Disease Control and Prevention ("CDC"), Coronavirus Disease 2019 ("COVID-19") is a respiratory illness that can spread from person to person. COVID-19 can attack human lungs and kill infected persons, especially those who have certain risk factors identified by the CDC.

48. Section 2104 of CARES Act, entitled "Emergency Increase in Unemployment Compensation Benefits," provided for an additional $300 weekly payment, known as "Federal Pandemic Unemployment Compensation" or "FPUC," to certain eligible individuals who were receiving other UI benefits under state law.

49. At all times relevant to this Indictment, Carbon had bank accounts ending in x7464 and x1153 with PNC Bank.

### THE SCHEME TO DEFRAUD BY FRAUDULENTLY TRANSFERRING OTHER BENEFICIARIES' UI BEFITS TO BUTLER'S OWN BANK ACCOUNTS

50. Carbon, while receiving PPP funds, indicated to MODES that he had not received any PPP funds and was presently unemployed.

51. It was further part of the scheme that, in a weekly request for information, Carbon misrepresented to MODES that he did not receive any PPP or disaster pay, including August of

9

2020, when he on or about June 30, 2020, he had received $10,000 in EIDL loan proceeds, and on or about August 10, 2020 when he received $18,800 in PPP loan proceeds.

52.   It was further part of the scheme that Carbon misrepresented that he had been a self-employed event planner.

53.   It was further part of the scheme that Carbon misrepresented that he did not work from March of 2020 through August of 2020, when in truth and fact, Carbon had worked at 48forty Solutions during March of 2020.

54.   As a result of Carbon's misrepresentations in his application for UI benefits, between March of 2020 and August of 2021, UI benefits were transferred to Carbon's PNC account ending in x7464 totaling approximately $14,174.80.

55.   In furtherance of the scheme to defraud, on or about the following dates, Carbon caused an interstate wire transfer to occur, wherein funds from MODES were sent to his bank account with PNC Bank account ending in #7464:

   a.   September 9, 2020 for $14,174.80

   b.   October 28, 2020 for $160

56.   Defendant was not authorized to receive those deposits into his own accounts due to the fraudulent representations made in the UI application communications to MODES.

### COUNT III: WIRE FRAUD
### (18 U.S.C. § 1343)

57.   Paragraphs 1 through 56 are incorporated by reference, as if fully set forth herein.

58.   From on or about March of 2020, through on or about August of 2021, defendant Charles Carbon III devised and intended to devise a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and willfully participated in such a scheme with knowledge of its fraudulent nature, and for the purpose

of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| COUNT | ON OR ABOUT COUNT DATE | DESCRIPTION |
|---|---|---|
| III | September 9, 2020 | Transfer of $14,174.80 from MODES account ending in x0902 to PNC Bank account ending in x7464 |

All in violation of Title 18, United States Code, Section 1343.

### FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of offenses in violation of Title 18, United States Code, Section 1344 as set forth in Counts I-III, Defendant Charles Carbon III shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violations. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation, which is approximately $52,444.80.

2. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

11

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
EDWARD DOWD, #61909(MO)
Assistant United States Attorney